IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

| | |
|---|---|
| JAVANTE HARRIS-EVANS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CIVIL ACTION NO. 5:21-cv-331 (MTT) |
| | ) |
| CERT OFFICER C. LOCKETT, *et al.*, | ) |
| | ) |
| Defendants. | ) |

__ORDER__

Plaintiff Javante Harris-Evans—an inmate in the custody of the Georgia Department of Corrections ("GDC")—raises a variety of constitutional and state law claims that stem from a use of force incident that occurred during his intake at Macon State Prison ("MSP"). Doc. 27. Defendants Corey Lockett, Malcolm Williams, Joseph Williams, and Carrington Williams—all members of the GDC's Correctional Emergency Response Team ("CERT")—move to dismiss all claims except for Harris-Evans's individual capacity failure to protect and excessive force claims. Doc. 35. The remaining defendants—the GDC, Warden Smith, Warden Philbin, Captain Hudson, Officer Sales, Officer Finch, and Peter Eaddie—move to dismiss Harris-Evans's claims against them in their entirety.[1] Docs. 35; 39. For the reasons discussed below, the defendants' partial motion to dismiss (Docs. 35; 39) is **GRANTED**.

---

[1] The relief requested in the defendants' motion is ambiguous, and in some respects at odds with the arguments made in their brief. *See* Docs. 35; 35-1. Specifically, defense counsel notes that defendants J. Williams, C. Williams, M. Williams, Lockett, and Finch "are moving only to dismiss the claims against them in their official capacity, the claims against them in Count II, and the state law claims against them in Count IV." Docs. 35 at 1; 35-1 at 1. But Count II only names Finch, and the body of the defendants' brief

## I. BACKGROUND

Harris-Evans was transferred to MSP on February 11, 2021.  Doc. 27 ¶ 16.  As part of the intake process, CERT officers J. Williams, C. Williams, M. Williams and Lockett escorted Harris-Evans to the medical lobby.  *Id.* ¶ 17.  A video camera was in the lobby, and certain supervisory officials were required to monitor the camera footage and intervene in certain circumstances.  *Id.* ¶¶ 58, 59.

When Harris-Evans arrived in the medical lobby, he was issued a net-mesh bag that contained his uniform.  *Id.* ¶ 18.  Harris-Evans then went to retrieve the uniform from the bag, but a knot in the drawstring of the bag prevented him from doing so.  *Id.*  Apparently perturbed at the delay, CERT officer Lockett approached Harris-Evans and asked, "why the f**k you don't have your shirt on yet."  *Id.* ¶ 19.  As Harris-Evans attempted to explain the situation, Lockett "slapped the bag" out of his hand and said "[n]ow hurry up B***h."  *Id.*  Harris-Evans then reached down to retrieve the bag from the floor, and in doing so, told Lockett he didn't have to be disrespectful.  *Id.* ¶ 20.  CERT officer C. Williams then ordered Harris-Evans to stand against the wall and place his hands on his head.  *Id.* ¶ 21.  Harris-Evans immediately complied.  *Id.*

While facing the wall with his hands above his head, Harris-Evans heard an unidentified CERT officer say "stop resisting."  *Id.* ¶ 22.  As Harris-Evans turned to see who the officer was addressing, Lockett pushed him to the floor.  *Id.*  Once on the floor, Harris-Evans was kicked, punched, beaten, and handcuffed by CERT officers J.

---

makes clear that they are in fact moving to dismiss Count III, the civil conspiracy claim against J. Williams, C. Williams, M. Williams, Lockett, and Finch.  Doc. 35-1 at 8-9.  Further, defense counsel argues that the failure to protect claim against Finch should be dismissed, which is contrary to the introductory language of the brief and the language in the filed motion.  Docs. 35 at 1; 35-1 at 1, 10.  To the extent there is ambiguity, the Court defers to the arguments made in the defendants' brief.  Harris-Evans, the Court notes, has responded to those arguments.

Williams, C. Williams, M. Williams, and Lockett. *Id.* ¶ 23. According to Harris-Evans, he was intentionally isolated in the medical lobby while the beating occurred. *Id.* ¶ 25.

Harris-Evans was escorted to the back of the medical office for treatment a "short time thereafter." *Id.* ¶ 26. Because a use of force incident had occurred, Standard Operating Procedure ("SOP") required the CERT officers that escorted Harris-Evans to record the escort on video. *Id.* ¶ 27. Nonetheless, the CERT officers failed to do so. *Id.* ¶ 28. Once at the medical office, a physician evaluated Harris-Evans and recommended he receive treatment at an off-site hospital due to injuries to his nose and face. *Id.* ¶ 29. In total, Harris-Evans suffered a fractured nose, broken tooth, facial swelling, and neurological effects that continue to manifest in severe headaches, body aches, and body spasms. *Id.* ¶ 30.

Harris-Evans did not immediately receive treatment at an off-site hospital as recommended by the physician. *See id.* ¶ 31. Rather, he was transported from the medical office to "the hole" to stay for the night. *Id.* Lockett retrieved Harris-Evans the next morning and escorted him to a general population dormitory. *Id.* During that escort, Lockett warned Harris-Evans that if he told anyone about the previous day's incident, the CERT officers "would pay him another visit." *Id.* ¶ 32. On February 16, 2021, Harris-Evans filed a grievance with Finch, who worked as a MSP counselor at the time. *Id.* ¶ 33. The grievance was denied on March 1, 2021, although Harris-Evans was advised the matter would be investigated by the GDC's Criminal Investigations Division ("CID"). *Id.* ¶ 34. Around that same time, Harris-Evans was evaluated by the medical unit at MSP, advised that surgical treatment was required, and subsequently transferred to Augusta State Medical Prison ("ASMP"). *Id.* ¶¶ 35-36. Harris-Evans,

however, was never scheduled for surgery when he arrived at ASMP and was transferred back to MSP shortly thereafter. *Id.* ¶ 36.

Meanwhile, Finch—the counselor who had processed Harris-Evans's grievance—was reassigned from the counselor division to the CERT unit at MSP. *Id.* ¶ 37. Once Finch was transferred, CERT officers began to target Harris-Evans. *Id*. Things, apparently, continued to escalate, and on August 7, 2021, a fellow inmate informed Harris-Evans that CERT officers had instructed other inmates to attack him. *Id.* ¶ 38. On September 2, 2021, CERT officers approached Harris-Evans and proposed he drop his claims in return for food. *Id.* ¶ 39.

Proceeding pro se, Harris-Evans filed his initial complaint and motion to proceed *in forma pauperis* on September 9, 2021. Docs. 1; 2. In that complaint, Harris-Evans only alleged an Eighth Amendment excessive force claim against CERT officers J. Williams, C. Williams, M. Williams, and Lockett. Docs. 1 at 4; 1-1 at 5. The Court granted Harris-Evans leave to proceed *in forma pauperis* and allowed his claim to proceed. Doc. 4. With discovery already underway, Harris-Evans retained counsel on March 11, 2022. Doc. 17. The parties then jointly moved for leave to file an amended complaint and for an additional six months to conduct discovery, which the Court granted. Docs. 20; 21. Harris-Evans filed his amended complaint on June 6, 2022. Doc. 27. Harris-Evans's amended complaint not only names the original CERT officer defendants, but also the GDC, the Warden of MSP (Smith), the Warden of ASMP (Philbin), three Deputy Wardens of Security at MSP who supervised the CERT officers (Hudson, Eaddie and Sales), and a fifth CERT officer, Finch, who was transferred to that role after the alleged use of force incident. *Id.* ¶¶ 4-14, 37. As amended, Harris-

Evans alleges (1) an excessive force claim against the CERT officer defendants; (2) a supervisory liability claim against defendants Smith, Sales, Eaddie, Hudson, and Finch; (3) a civil conspiracy claim against the CERT officer defendants and Finch; (4) state law claims against the CERT officer defendants; (5) a failure to protect claim against the CERT officer defendants and Smith, Sales, Eaddie, Hudson, and Finch; (6) a medical needs claim against the GDC, Smith, and Philbin; and (7) a failure to train claim against the GDC, Smith, Eaddie, Hudson, and Sales.[2]  *Id.* ¶¶ 46-104.  The defendants then moved to dismiss all claims except for the excessive force and failure to protect claims against the original CERT officer defendants.  Docs. 35; 39.  Shortly thereafter, the Court, on the defendants' motion, stayed all discovery until the resolution of the defendants' motion to dismiss.  Docs. 36; 37.

## II. STANDARD

The Federal Rules of Civil Procedure require that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).  To avoid dismissal pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to "'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007)).  A claim is facially plausible when "the court [can] draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  "Factual allegations that are merely consistent with a defendant's liability fall short of being facially plausible."  *Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1337 (11th Cir. 2012) (internal quotation marks and citations omitted).

---

[2] Harris-Evans withdraws his claims against the GDC on the basis of Eleventh Amendment immunity. Doc. 43 at 4-5.

At the motion to dismiss stage, "all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff." *FindWhat Inv. Grp. v. FindWhat.com.*, 658 F.3d 1282, 1296 (11th Cir. 2011) (internal quotation marks and citations omitted).  But "conclusory allegations, unwarranted deductions of facts or legal conclusions masquerading as facts will not prevent dismissal." *Wiersum v. U.S. Bank, N.A.,* 785 F.3d 483, 485 (11th Cir. 2015) (cleaned up).  The complaint must "give the defendant fair notice of what the … claim is and the grounds upon which it rests[.]"  *Twombly*, 550 U.S. at 555 (internal quotation marks and citation omitted).  Where there are dispositive issues of law, a court may dismiss a claim regardless of the alleged facts.  *Patel v. Specialized Loan Servicing, LLC*, 904 F.3d 1314, 1321 (11th Cir. 2018) (citations omitted).

### III. DISCUSSION

**A. Harris-Evans's Supervisory Liability and Failure to Train Claims Fail**

Harris-Evans alleges that the Warden of MSP (Smith), the Deputy Wardens of Security at MSP (Hudson, Eaddie, and Sales), and a fifth CERT officer (Finch) are liable because, in some capacity, they supervised and/or trained the CERT officers who allegedly beat him.  Doc. 27 ¶¶ 51-67, 97-104.  It is well established that "supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability."  *Keith v. DeKalb Cnty., Ga*., 749 F.3d 1034, 1047 (11th Cir. 2014) (internal quotation marks and citations omitted). "Instead, to hold a supervisor liable a plaintiff must show that the supervisor either directly participated in the unconstitutional conduct or that a causal connection exists between the supervisor's actions and the alleged constitutional violation."  *Id*. at 1047-

48. "The necessary causal connection can be established when a history of widespread abuse puts the responsible supervisor on notice of the need to correct the alleged deprivation, and he fails to do so.  Alternatively, the causal connection may be established when a supervisor's custom or policy results in deliberate indifference to constitutional rights or when facts support an inference that the supervisor directed the subordinates to act unlawfully or knew that the subordinates would act unlawfully and failed to stop them from doing so."  *Id*. at 1048 (cleaned up).

Similarly, to succeed on a § 1983 failure to train claim, a supervising official is only liable when "his failure to train amounts to deliberate indifference to the rights of persons with whom the subordinates come into contact and the failure has actually caused the injury of which the plaintiff complains."  *Belcher v. City of Foley, Ala.*, 30 F.3d 1390, 1397 (11th Cir. 1994) (internal quotation marks and citations omitted).  In a failure to train case, a plaintiff "must demonstrate that the supervisor had 'actual or constructive notice that a particular omission in their training program causes his employees to violate citizens' constitutional rights,' and that armed with that knowledge the supervisor chose to retain that training program."  *Keith*, 749 F.3d at 1052 (quoting *Connick v. Thompson*, 563 U.S. 51, 61 (2011)).  "To establish that supervisor was on actual or constructive notice of the deficiency of training, '[a] pattern of similar constitutional violations by untrained employees is ordinarily necessary.'"  *Id*. at 1053 (quoting *Connick*, 563 U.S. at 62).

As best the Court can tell, Harris-Evans relies on three allegations to support his supervisory liability and failure to train claims.[3]  *See* Doc. 43 a 6-10.  First, Harris-Evans

---

[3] In terms of coherent factual allegations, Harris-Evans pleads himself out of court with respect to his supervisory liability claim against Finch.  In the body of his amended complaint, Harris-Evans alleges

alleges MSP has a "history and pattern and practice of hiring CERT Officers" who have used excessive force against inmates at MSP.  Doc. 27 ¶¶ 53, 98.  But Harris-Evans does not allege any specific facts to support that conclusory allegation, and one isolated excessive force incident cannot support the supervisory liability and failure to train claims alleged here.  *See Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir. 1999) ("The deprivations that constitute widespread abuse sufficient to notify the supervising official must be obvious, flagrant, rampant and of continued duration, rather than isolated occurrences.") (internal quotation marks and citations omitted); *see also Keith*, 749 F.3d at 1053 (stating "a pattern of similar constitutional violations" is necessary to establish deficient training).

Second, Harris-Evans argues that because there was a video camera in the medical lobby, and the named supervisory defendants, for some reason Harris-Evans does not disclose, had a responsibility to monitor the feed from that camera, then they are liable for failing to intervene when the alleged use of force incident occurred.  Doc. 27 ¶¶ 58-59.  But Harris-Evans doesn't allege that any supervisory defendant was monitoring the cameras at the time of the assault, nor does he allege any of the supervisory defendants were physically present when the use of force incident occurred.  *See id.* ¶¶ 62-66.  Instead, Harris-Evans essentially argues that because there was a camera which *should* have been monitored, then all supervisors are liable when no one intervened during the use of force incident.  Such "legal conclusions cast

---

Finch was working as a grievance counselor at MSP when the use of force incident occurred on February 11, 2021.  Doc. 27 ¶¶ 16, 33.  Indeed, Finch was not reassigned from the counselor division to the CERT unit at MSP until sometime in mid-February or early March.  *See id.* ¶ 37.  Yet, for his supervisory liability claim against Finch, Harris-Evans alleges Finch "had requisite supervisory authority to stop the beating of Plaintiff and to take action against those who unconstitutionally beat Plaintiff and other inmates, yet, failed to do so."  *Id.* ¶ 66.  Not only is that allegation conclusory, but it is also directly contrary to Harris-Evans's allegation that Finch was a grievance counselor at the time the use of force incident occurred.

in the form of factual allegations" are not sufficient for Harris-Evans's supervisory liability or failure to train claims to survive. *Long v. Fulton Cnty. Sch. Dist.*, 807 F. Supp. 2d 1274, 1282 (N.D. Ga. 2011).

Finally, Harris-Evans alleges failure to train liability exists because the CERT officers did not record themselves as they escorted Harris-Evans to the medical unit after the use of force incident occurred as required by MSP's SOP. Doc. 27 ¶¶ 101-103. But even if a violation of that policy was constitutionally violative—Harris-Evan's amended complaint does not disclose how that would be the case and his brief does not argue the point—Harris-Evans does not allege a pattern of similar constitutional violations by untrained employees. Because Harris-Evans fails to do so, any failure to train claims premised on a violation of MSP's SOP fail. *Keith*, 749 F.3d at 1053.

Simply put, Harris-Evans falls far short of stating supervisory liability and failure to train claims, and those claims are **DISMISSED**.

## B. Harris-Evans's Civil Conspiracy Claim Fails

Harris-Evans alleges the CERT officer defendants and Finch conspired to violate his Eighth Amendment right against cruel and unusual punishment. Doc. 27 ¶¶ 68-73. "It is not enough to simply aver in the complaint that a conspiracy existed." *Fullman v. Graddick,* 739 F.2d 553, 557 (11th Cir. 1984). To plead a viable Section 1983 conspiracy, Harris-Evans must (1) plausibly allege that the defendants "reached an understanding" to violate his rights and (2) plausibly allege "an actionable wrong to support the conspiracy." *Bailey v. Board of County Comm'rs of Alachua County, Fla.*, 956 F.2d 1112, 1122 (11th Cir. 1992) (internal quotation marks and citations omitted). "[T]he linchpin for conspiracy is agreement, which presupposes communication[.]"

*Id*. Harris-Evans's amended complaint offers no specifics as to when or how an agreement among any of the CERT officer defendants and Finch may have been reached. Harris-Evans *implies*—and that is all he does—that Finch, once transferred to CERT, revealed the fact that Harris-Evans grieved the use of force incident to his new CERT cohorts. *See* Doc. 27 ¶ 37. But merely because CERT officers began to target Harris-Evans once Finch was transferred isn't enough to state a claim for civil conspiracy when Harris-Evans alleges no facts to support how, or when, that conspiracy was formed. *Fullman,* 739 F.2d at 556-57 ("A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy."). Nor is the fact that the CERT officers collectively beat Harris-Evans as he seems to suggest. *Id*. Harris-Evans's civil conspiracy claim is **DISMISSED**.

**C. Harris-Evans's Failure to Protect Claim Partially Fails**

Harris-Evans also alleges a failure to protect claim against Smith, Sales, Eaddie, Hudson, Finch, and the CERT officer defendants. Doc. 27 ¶¶ 78-85. The defendants only move to dismiss the former; they do not move to dismiss Harris-Evans's failure to protect claim against the CERT officers. Doc. 35-1 at 10 n.2. It is only "[a] prison official's 'deliberate indifference' to a substantial risk of serious harm to an inmate [that] violates the Eighth Amendment." *Farmer v. Brennan*, 511 U.S. 825, 828 (1994). "Merely negligent failure to protect an inmate from attack does not justify liability under section 1983[.]" *Brown v. Hughes*, 894 F.2d 1533, 1537 (11th Cir. 1990). Rather, to survive a motion to dismiss on an Eighth Amendment failure to protect claim, an inmate must plausibly allege: "(1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Goodman v. Kimbrough*, 718

F.3d 1325, 1331 (11th Cir. 2013).  To establish deliberate indifference in this context, a prisoner must show that prison officials "subjectively knew of the substantial risk of serious harm and that [the prison officials] knowingly or recklessly disregarded that risk." *Id.* at 1332 (internal quotation marks and citations omitted).

Here, Harris-Evans doesn't even allege negligence, let alone a constitutional violation.  The extent of Harris-Evans's allegations to support the subjective element of his failure to protect claim against Smith, Sales, Eaddie, Hudson, and Finch is that those defendants "were subjectively aware of a substantial risk of serious harm to Plaintiff posed by the CERT team."  Doc. 27 ¶ 80.  Harris-Evans doesn't provide factual allegations to support that conclusory allegation.  As to causation, Harris-Evans alleges the "[d]efendants' deliberate indifference caused Plaintiff to suffer a violent attack, leaving him bleeding profusely and suffering significant and severe physical and mental injuries."  *Id.* ¶ 84.  Again, Harris-Evans's amended complaint is devoid of any factual allegations, let alone specific factual allegations against each defendant, that are required to state a plausible claim for relief.  *See Twombly,* 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed.").  Harris-Evans's failure to protect claim, with respect to Smith, Sales, Eaddie, Hudson, and Finch is **DISMISSED**.

**D. Harris-Evans's Medical Needs Claim Fails**

Although Harris-Evans alleges Philbin and Smith were deliberately indifferent to his serious medical needs, he provides few details to support that claim.  Doc. 27 ¶¶ 86-96.  "To show that a prison official acted with deliberate indifference to serious medical needs, a plaintiff must satisfy both an objective and a subjective inquiry."

*Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Regarding the objective component, an inmate must plausibly allege "an objectively serious medical need" that, "if left unattended, poses a substantial risk of serious harm[.]" *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000) (cleaned up). With respect to the subjective component, Harris-Evans must plausibly allege: "(1) subjective knowledge of a risk of serious harm; (2) disregard of that risk; (3) by conduct that is more than mere negligence." *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). Finally, as with any tort claim, Harris-Evans must allege that an injury was caused by the prison official's wrongful conduct. *Goebert v. Lee Cnty.*, 510 F.3d 1312, 1326 (11th Cir. 2007).

As pled, Harris-Evans's injuries certainly constitute "an objectively serious medical need," and the defendants don't argue otherwise. Docs. 27 ¶¶ 29-30; 35-1 at 13. But Harris-Evans fails to plead the remaining elements of his medical needs claim against either Philbin or Smith. For example, while Harris-Evans alleges he was transferred to ASMP and placed under the care of Philbin, the Warden of ASMP, the conclusory allegations that follow, such as "Philbin had a duty and responsibility to ensure that Plaintiff received the proper medical care and treatment for serious medical needs[,]" are the exact type of threadbare assertions that fail at the pleadings stage. Doc. 27 ¶ 92; *see Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). With respect to Smith, the Warden of MSP, Harris-Evans's medical needs claim against him is just a rehashed supervisory liability claim, which for the reasons discussed *infra*, fails. *See* Doc. 27 ¶¶ 5, 86-96. Perhaps the best example of Harris-Evans's defective pleading is Harris-Evans's allegation that "Smith and Philbin were subjectively aware of

Plaintiff's serious medical condition and have refused to schedule him for and ensure that he receive the necessary surgical treatment. Such acts constitute a deliberate indifference to the serious medical needs of the Plaintiff." *Id.* ¶ 93. Without more, Harris-Evans falls short of pleading the subjective knowledge and causation elements of a medical needs claim against either Smith or Philbin. *See Iqbal*, 556 U.S. at 681 ("It is the conclusory nature of respondent's allegations, rather than their extravagantly fanciful nature, that disentitles them to the presumption of truth."). Accordingly, Harris-Evans's medical needs claim is **DISMISSED**.

### E. Harris-Evans's § 1983 Official Capacity Claims Fail

The Eleventh Amendment bars federal courts from entertaining suits against a state without the state's consent. *See Manders v. Lee*, 338 F.3d 1304, 1308 (11th Cir. 2003). The Eleventh Amendment applies not only to the State itself, but also any defendant who acts as an "arm of the State." *Id*. But with respect to § 1983 claims, it is not just the Eleventh Amendment that bars official capacity claims for damages. States—and, by extension, arms of the state—are not "persons" within the meaning of § 1983. *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989). And § 1983 subjects only "persons" to monetary liability for violations of constitutional rights. Either way, Harris-Evans's amended complaint makes clear that all defendants in this case are employed by the GDC, and thus are "arms of the state" for purposes of Eleventh Amendment immunity and § 1983 personhood analysis. Doc. 27 ¶¶ 4-14. To the extent Harris-Evans seeks monetary damages for constitutional violations against the CERT

officers in their official capacities—the only remaining defendants in this case—those claims are **DISMISSED**.[4]

### F. Harris-Evans's State Law Claims Fail

Harris-Evans also brings state law claims for assault and battery against the CERT officers in their official and individual capacities. Doc. 27 ¶¶ 10-13, 74-77. As the defendants note, these claims are squarely barred by the Georgia Tort Claims Act ("GTCA") and various flavors of sovereign immunity. Docs. 35-1 at 17-22; 47 at 7-9. The GTCA "constitutes the exclusive remedy for any tort committed by a state officer or employee." O.C.G.A. § 50-21-25(a). Pursuant to the GTCA, "[a] state officer or employee who commits a tort while acting within the scope of his or her official duties or employment is not subject to lawsuit or liability therefor." *Id.* An employee or officer is acting within his "scope of employment" when he is "performing the regular duties of [his] employment, during [his] regular hours of employment, [and] at [his] regular site of employment." *Shekhawat v. Jones*, 293 Ga. 468, 474, 746 S.E.2d 89, 93 (2013). Immunity under the GTCA even applies when the officer or employee is accused of committing torts that are "intentional or malicious." *Ridley v. Johns*, 274 Ga. 241, 242, 552 S.E.2d 853, 854 (2001). Finally, "[t]he GTCA applies to actions against state employees in their official and individual capacities; merely styling a suit against a public officer as one brought against [him] personally does not deprive [him] of any immunity to which [he] might otherwise be entitled to under the GTCA." *Smith v. Hatcher*, 516 F. Supp. 3d 1369, 1377 n.7 (S.D. Ga. 2021) (citing O.C.G.A. § 50-21-25(a); *Stephens v. Coan*, 349 Ga. App. 147, 825 S.E.2d 525 (2019)).

---

[4] Of course, damages remain available for Harris-Evans's individual capacity claims against the CERT officers, which the CERT officers do not move to dismiss.

Harris-Evans nonetheless contends that the GTCA does not bar his state law claims because the CERT officers were named in their individual capacities and "not acting within the discretionary acts of their employment at the time of the attack[.]" Doc. 43 at 21.  Harris-Evans's counsel does not cite any authority for that assertion.  First, Harris-Evans's amended complaint makes clear that the CERT officers were "at all times relevant to this action [officers] at Macon State Prison and employed by the GDC[.]"  Doc. 27 ¶¶ 10-13.  Second, merely alleging the CERT officers' use of force was "malicious and sadistic" doesn't change a thing—the CERT officers were still acting within their "scope of employment" with the GDC when the alleged use of force incident occurred, and thus, the GTCA shields the CERT officers from being sued in an individual capacity for the assault and battery claims asserted here.[5]  *Ridley*, 274 Ga. at 242, 552 S.E.2d at 854-855.

Because the CERT officers are immune from suit in their individual capacities, Harris-Evans's state law claims must proceed against the GDC, the state governmental entity that employed the CERT officers.  The GTCA instructs tort claimants to "name as a party defendant *only* the state government entity for which the state officer or employee was acting and [to] not name the state officer[s] or employee[s] individually." O.C.G.A. § 50-21-25(b) (emphasis added).  Harris-Evans didn't do that, but even if he did, his state law claims would fail.  First, the GTCA only waives sovereign immunity to the extent the action is "brought in the courts of the State of Georgia," of which this

---

[5] *See, e.g., Mattox v. Bailey*, 221 Ga. App. 546, 472 S.E.2d 130, 131 (1996) (inmate's tort claim against correctional officer who "slammed plaintiff's head into a door" was barred by the GTCA because the alleged battery arose from the performance of the correctional officer's official duties); *Davis v. Standifer*, 275 Ga. App. 769, 771, 621 S.E.2d 852, 855 (2005) (sexual assault by a Georgia State Patrol officer that occurred during a traffic stop of the plaintiff's vehicle was within the scope of the officer's official duties).

Court is not one. O.C.G.A. § 50-21-23(b). As discussed *infra*, the Eleventh Amendment bars federal courts from entertaining suits against a state without the state's consent. See *Manders*, 338 F.3d at 1308. Because the GDC is an "arm of the state" under Georgia law, Harris-Evans's state law claims against the GDC are barred by Eleventh Amendment immunity. See *McBride v. Bd. of Corr.*, 221 Ga. App. 796, 472 S.E.2d 693, 695 (1996) (holding GDC is an "arm of the state" for purposes of sovereign immunity).

Second, even if Harris-Evans were to bring his assault and battery claims in state court, they would fail there too. The GTCA is a limited waiver of sovereign immunity and *does not* waive such immunity "for losses resulting from … [a]ssault, battery, false imprisonment, false arrest, malicious prosecution, abuse of process, libel, slander, or interference with contractual rights[.]" O.C.G.A. § 50-21-24(7). Put differently, the State of Georgia preserves its sovereign immunity with respect to assault and battery claims—the exact type of claims Harris-Evans seeks to assert against it. Accordingly, Harris-Evans's state law claims for assault and battery are **DISMISSED**.

## IV. CONCLUSION

In summary, Harris-Evans retained counsel, and through counsel, filed an amended complaint. That amended complaint added numerous claims and defendants, all of which fail, except for the newly alleged failure to protect claim against the original CERT officer defendants. The defendants' partial motion to dismiss (Docs. 35; 39) is **GRANTED**. Accordingly, the stay in this case (Doc. 37) is **LIFTED**, and the parties may proceed with discovery.

**SO ORDERED**, this 5th day of December, 2022.

S/ Marc T. Treadwell
MARC T. TREADWELL, CHIEF JUDGE
UNITED STATES DISTRICT COURT
